Brown and wife, Respondents, vs. Wisconsin-Minnesota Light & Power Company, Appellant.

*October 8—December 2, 1919.*

*Electricity: Transmission line: Right-of-way contract: Warranty deed with restrictions: Right to trim trees: Eminent domain: Remedy of owner for cutting trees: Measure of damages.*

1. Where a contract for the sale of a fifty-foot strip of farm land to a power company provided that no towers were to be placed in front of the seller's dwelling house, that the land was to be used as a right of way for transmission lines, and that trees should be trimmed so as not to interfere with the lines, such restrictions on the use of the land, being reasonable and valid as not inconsistent ·with public interest or public policy, did not prevent the title conveyed from being a fee or turn it into a mere easement, the contract calling for a warranty deed of the land free and clear of all incumbrances.

2. The restriction in the contract that trees should be trimmed "so as not to interfere with the lines,". is *held* not to apply only to trees outside of the fifty-foot strip, there being but four of these on the owner's premises to which the language could possibly refer, while there were more than one hundred on the strip conveyed.

3. Where the landowner never consented to the cutting down of the trees, but vigorously objected, the principle that one who expressly or tacitly consents to the occupation of his land by a public utility cannot sue for trespass but must condemn, does not apply.

4. The evidence establishing that a clearance of ten feet is necessary to prevent electricity from leaping from the wires to tree branches, the company had a right, under the clause permitting it to trim the trees so as not to "interfere" with its lines, to trim them so that no branch was within ·ten feet of the nearest line.

5. The damage to the owner from the company's acts in cutting trees in excess of what was necessary is the difference between the value of the farm with the trees trimmed in the manner provided by the contract and its value with the trees cut down.

Appeal from a judgment of the circuit court for St. Croix county: George Thompson, Circuit Judge. *Reversed.*

Trespass.  Plaintiffs are husband and wife and own a farm of 240 acres in St. Croix county bounded on the north by an east-and-west highway.  Their dwelling house and other buildings stood about four rods south of the highway. July 27, 1915, the plaintiffs made a written contract with the defendant (a public utility corporation operating an electric power transmission line) by which, in consideration of $1 then paid and $525 to be paid on the execution of a deed, they agreed to sell to defendant at its option within two years, "free and clear of all incumbrances, a strip of land fifty feet in width over and across" their said farm (describing it), said strip being immediately south of the south line of said highway.  · The agreement further provided that "said company shall permit the grantors, their heirs and assigns, . . . to use the said property hereby agreed to be conveyed for their own purposes without payment of rent so long as the said uses by the said grantors do not interfere with any present or future uses which the said company, its successors or assigns, may desire to make of the premises to be conveyed.  No towers to be placed in front of the dwelling, trees to be trimmed so as not to interfere with lines. Said land to be used for the right of way or for electric transmission lines."  The agreement also provided for the execution and delivery of a good and sufficient warranty deed of the strip to the defendant, in payment of the agreed consideration, acknowledging full settlement of all claims for damages sustained by reason of the construction and maintenance of the power lines on the premises, "and said company shall have the right in the meantime to enter upon said land and construct its transmission lines thereon.  Said deed shall provide that said consideration is in full payment for all damages caused by the cutting of timber on all lands owned by us which may be found necessary in order to leave the said lines safe from falling timber."

The evidence shows that immediately in front of the plaintiffs' dwelling house and within the fifty-foot strip

there were twenty-seven soft maple and box elder trees, to the east of these trees and in the highway along the north side of the fifty-foot strip were twenty-nine box elder and elm trees, while to the west and in the highway along the north side of the said strip were fifty-two trees in a double row.    The trees were young trees thirty or thirty-five feet in height and were for windbreak and shade.    It was admitted that before cutting any trees the defendant tendered full payment as provided by the contract.    In the summer of 1916 the defendant took possession of the fifty-foot strip and, against plaintiffs' vigorous protest, cut down all the trees in the fifty-foot strip and in the highway along the north line of the strip.    This action was brought to recover damages for the cutting down of the said trees, it being contended by the plaintiffs that the defendant only purchased a right of way over the fifty-foot strip, with permission to trim the trees on the strip and along the highway adjacent to the strip so as not to interfere with the wires, but with no right to cut them down.    The trial court held as matter of law that the plaintiffs were entitled to recover, and the jury decided by special verdict (1) that the fair market value of the plaintiffs' farm immediately before the cutting of the trees, taking into consideration the existence of the contract, was $28,000; (2) that defendant did more trimming and cutting of trees on the strip and the highway adjoining than was necessary to prevent interference with the transmission lines and leave them safe from falling timber; (3) that the fair market value of the farm immediately after the cutting of the trees, taking into consideration the existence of the contract, was $24,500; (4) that the plaintiffs suffered special damage by the cutting of the trees not included in the diminution in value of the farm amounting to $250.    Upon this verdict judgment was rendered for the plaintiffs for $3,500 and costs, and the defendant appeals.

*Spencer Haven* of Hudson and *G. O. Linderman* of Eau Claire, for the appellant.

For the respondents there was a brief by *Varnum & Kirk* of Hudson and *McNally & Doar* of New Richmond, and oral argument by *W. F. McNally, W. T. Doar,* and *N. O. Varnum.*

Winslow, C. J.    The contract in question called for the conveyance of a fee title to the strip in no uncertain terms. It called for a warranty deed of the land free and clear of all incumbrances, and that means but one thing.    True, there were to be certain restrictions on the use of the land, but these do not prevent the title from being a fee or turn it into a mere easement.    *Polebitzke v. John Week L. Co.* 157 Wis. 377, 147 N. W. 703.    They are not inconsistent with a fee title: they simply restrict the use of the premises within certain limits.    When such restrictions are reasonable and not inconsistent with public interest or public policy they are valid.    13 Cyc. 713 *et seq.;* 8 Ruling Case Law, p. 1115, § 177.    In the present case it is very apparent that the provisions that no towers are to be placed in front of the dwelling house and that the land is to be used as a right of way for transmission lines are reasonable restrictions upon the use of the land, and we think the provision with regard to the trimming of trees was intended by the parties as also such a restriction, and it certainly is not unreasonable.    It is hardly to be imagined that the plaintiffs would deliberately surrender the whole front of their estate, covered as it was with shade trees which they themselves had planted and nurtured, to the woodman's ax without any restriction or qualification.    They unquestionably desired to retain the trees as far as was consistent with the operation of the electric transmission wires, and this desire was expressed in the words, "trees to be trimmed so as not to interfere with the lines."

The idea is quite clear though the words used do not with technical correctness describe the restrictive covenant or condition which is to be inserted in the deed.

The argument that this language applies only to trees outside of the fifty-foot strip does not seem sound or convincing. There were but four trees on the plaintiffs' premises outside of the strip and the street adjacent thereto which the language could possibly refer to. It is not reasonable to suppose that the plaintiffs took such pains to preserve these few trees as the provisions of the contract indicate and turned over more than a hundred others to the defendant to do as it pleased with them without restriction.

Nor can we agree with the contention of the appellant that condemnation is the plaintiffs' only remedy under the principle announced in *Hanlin v. C. & N. W. R. Co.* 61 Wis. 515, 21 N. W. 623, and followed ever since that time (*Cronin v. Janesville T. Co.* 163 Wis. 436, 158 N. W. 254), namely, that when one has expressly or tacitly consented to the occupation of his land for railway purposes he cannot bring an action for trespass but must condemn.

There was never any consent given here to the cutting down of these trees; on the contrary, there was vigorous objection from the very beginning. We cannot regard the consent which was given to use the premises in a certain restricted way as enabling the defendant to enter and do what it pleased regardless of the restriction to which it had agreed. It could thus accomplish by strategem what it could not accomplish by fair and open dealing. If, as is claimed, it would be difficult to build the transmission line without cutting down the trees, that is something that should have been thought of before the contract was made.

It seems to be clearly established by the evidence that a clearance of ten feet is necessary in order to prevent the electric current from leaping from the transmission wire to a branch. The defendant had the right under its contract to trim the trees so as not to "interfere" with its lines. This must be held to mean, under the evidence as given on the trial, that no branch should be left within ten feet of the nearest line, not merely that no branch should physically

touch a line. If a branch be near enough so that the current will leap to it from the wire, that clearly constitutes an interference.

The result is that there must be a new trial because of the application of a wrong rule of damages. The damages consist of the difference between the value of the farm with the trees trimmed in the manner provided by the contract and its value with the trees cut down.

*By the Court.*—Judgment reversed, and action remanded for a new trial.