LAABS and wife, Appellants, v. BOLGER and wife, Respondents.

*September 2—September 29, 1964.*

18

For the appellants there was a brief by *M. Wesley Kuswa,* attorney, and *Clarence P. Nett* of counsel, both of Milwaukee, and oral argument by *Mr. Kuswa.*

For the respondents there was a brief by *O'Melia & Kaye* of Rhinelander, and oral argument by *Walter F. Kaye*.

CURRIE, C. J.   While other issues are raised by the parties, we deem it sufficient for the purpose of this appeal to confine this opinion to two issues:

(1) Are the findings of fact of the trial court with respect to defendants' acts of adverse possession against the great weight and clear preponderance of the evidence?

(2) If such findings are not against the great weight and clear preponderance of the evidence, are such findings sufficient to support the judgment adjudicating title in the disputed parcel in defendants?

There is printed herein a detailed drawing which depicts the disputed area with relation to Minocqua lake, the town road, the buildings and private driveways located on both the plaintiffs' and defendants' adjoining properties. The disputed area is that lying within the letters "A," "B," "C," and "D." The aforementioned tree line coincides with the line C–D. Defendants are record owners of a parcel of land 150 feet in width from north to south which is bordered on the west by the town road and on the east by the lake; the southern boundary of the record parcel is 85 feet north of, and parallel to, the south line of government lot 1, section 15, township 39 north, range 6 east. When the defendants obtained title to, and entered into possession of, their property about April 21, 1941, there was a summer home or cottage located thereon, but to the north of the disputed parcel. In 1943 plaintiffs acquired title to lands lying immediately to the south and north of defendants' tract. The buildings and private driveway on the defendants' land adjoining the disputed area were to the south of the tree line. While defendants, commencing in 1941, occupied their premises each summer, plaintiffs spent but a day or two each

year on theirs from 1943 until 1958. Since 1958 plaintiffs have made their permanent residence on their land.

Defendants established by their own testimony, which was corroborated in part by other witnesses, the following facts: Defendants replaced the woven-wire fence which extended along the town road on the west side of the disputed parcel with a wooden fence; the lawn was fertilized, grass seed was sown, and the grass cut to the C–D line; six or seven pine seedlings and about 10 small poplar trees were planted along the C–D line starting about 20 feet east of the town road and extending eastward about 90 feet. Each year since 1941 more pine seedlings were planted along the C–D line until the present tree line extending from points C and D had been completed; later the poplars planted in 1941 were replaced with pines; since 1941 the grass has been kept mowed to the tree line; plaintiffs acquiesced in defendants' use and occupation of the disputed tract by never voicing any objection thereto; plaintiffs never attempted to occupy or make any use of the disputed parcel.

Plaintiffs by their testimony denied that defendants had commenced the planting of the tree line in 1941 and stated that the tree line was not started until 1946. They produced a forestry expert who made test borings in 1961 of every fourth tree in the tree line to determine the age of such trees by their growth rings. Because the pine seedlings when planted were 12 to 15 inches high, he assumed they were three years old at time of planting. His computation was that the trees sampled had been planted from fifteen to twenty-one years at the time he made the test borings. This computation disclosed one sampled tree which had been planted twenty-one years, two which had been planted twenty years, and three which had been planted nineteen years.

The credibility and weight to be given to the testimony of plaintiffs and the forestry expert were for the trial court.

Furthermore, defendants' testimony, and that of one of their witnesses who assisted with the tree planting in 1941, is corroborated to some extent by a 1943 photograph.

It is apparent why plaintiffs acquiesced in defendants' occupation of the disputed tract from the time plaintiffs bought their property in 1943 until the commencement of the action in January, 1962. Iron stakes had been set at points C and D at the time of a prior survey made before either defendants or plaintiffs purchased. In 1948, because of a road dispute not involving defendants, plaintiffs had one Hennig make a survey. This survey indicated the C–D line was the common boundary between defendants' and plaintiffs' properties. In 1960 defendants remodeled and extended northward a garage standing near the north boundary of their premises. Plaintiffs, believing the garage as extended encroached on their property which lies north of the defendants' property, had the Genisot survey made. This survey apprised plaintiffs that they were owners of record title to the disputed parcel. The trial court found the Genisot survey to be correct. The detailed drawing printed herewith was prepared from this survey.

On our review of the record we have no hesitancy in holding that the trial court's findings of fact with respect to acts of adverse possession, which were performed by defendants on the disputed parcel extending for more than twenty years, are not against the great weight and clear preponderance of the evidence. We also determine that such acts were sufficient in character and extent to constitute adverse possession within the meaning of sec. 330.09, Stats.[1] While

[1] This statute provides, "For the purpose of constituting an adverse possession by a person claiming title, not founded upon some written instrument or some judgment or decree, land shall be deemed to have been possessed and occupied in the following cases only:

"(1) When it has been protected by a substantial inclosure.

"(2) When it has been usually cultivated or improved."

the disputed parcel was not protected by a substantial enclosure, it was cultivated or improved in the manner customary for summer-cottage property.

In the case of property, the use of which is seasonal in character, the fact that it is not continuously occupied does not militate against such occupation being sufficient to constitute adverse possession so long as it is exclusive. *Kraus v. Mueller* (1961), 12 Wis. (2d) 430, 440, 107 N. W. (2d) 467, 108 N. W. (2d) 560; and *Burkhardt v. Smith* (1962), 17 Wis. (2d) 132, 139, 115 N. W. (2d) 540. In the *Kraus Case* we quoted with approval from the annotation entitled, " 'Adverse possession: Sufficiency, as regards continuity, of seasonal possession other than for agricultural or logging purposes,' " 24 A. L. R. (2d) 632, 633, as follows:

" 'The requirement of continuity of possession as one of the essential elements of adverse possession is satisfied, as regards activities which are seasonal in character (other than those relating to agriculture and logging), by the use of land commensurate with and appropriate to existing seasonal uses, needs, requirements, and limitations, having regard for the location and adaptability of the land to such uses.' "

With respect to the sufficiency of the character of defendants' acts of adverse possession, the case of *Burkhardt v. Smith, supra,* is particularly in point. That case involved land in a lake resort area. The acts of adverse possession therein held sufficient to vest title consisted in building a cottage which encroached on the disputed area, clearing brush, reseeding grass and planting of trees. In the instant case defendants' cottage was not located on the disputed area, but we deem this of little legal significance because of the requirement of sec. 330.08, Stats., that, "When there has been an actual continued occupation of any premises under a claim of title, exclusive of any other right, but not

founded upon any written instrument or any judgment or decree, the premises so actually occupied, *and no other,* shall be deemed to be held adversely." (Italics supplied.) The other features of possession by the instant defendants present a stronger case for establishing adverse possession in the statutory sense than in the *Burkhardt Case.* Here, commencing in 1941, not only was fertilizer applied and grass seed sown, but the lawn was mowed to a definite line, the C–D line. Furthermore, the trees planted by defendants were placed on this line.

For another summer-cottage case in which somewhat similar acts of adverse possession were held sufficient to vest title in the adverse possessor, see *Laurin v. Wyroski* (1963), 20 Wis. (2d) 254, 121 N. W. (2d) 764.

No explicit evidence of adversity is required since defendants' acts of occupation extended over twenty years which raises a presumption of adverse possession. *Northwoods Development Corp. v. Klement* (1964), 24 Wis. (2d) 387, 393, 129 N. W. (2d) 121, and *Illinois Steel Co. v. Budzisz* (1914), 157 Wis. 16, 20, 145 N. W. 212.

*By the Court.*—Judgment affirmed.