Adolph OTTO, Plaintiff-Respondent,

v.

Richard CORNELL and Dorothy Cornell, his wife, Defendants and Third-Party Plaintiffs-Appellants,

CONNOR FOREST INDUSTRIES, Third-Party Defendant.

Court of Appeals

*No. 83–625. Submitted on briefs February 13, 1984.—*
*Decided April 10, 1984.*
(Also reported in 349 N.W.2d 703.)

For the appellants the cause was submitted on the briefs of *Earl A. Charlton* and *Charlton Law Firm* of Milwaukee and *Robert A. Kennedy, Jr.,* and *Kennedy Law Office* of Crandon, of counsel.

For the respondent the cause was submitted on the brief of *John H. Priebe* and *O'Melia, Eckert & Assoc., S.C.,* of Rhinelander.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J.   Richard and Dorothy Cornell appeal a judgment awarding Adolph Otto title by adverse possession to a parcel of land within the legal description of their deed.   The Cornells also appeal Otto's award of punitive and actual damages for four trees Richard

destroyed. They contend that: (1) Otto failed to establish adverse possession, (2) the judgment inadequately described the property awarded, (3) the trial court applied the wrong rule in awarding actual damages and awarded excessive punitive damages, (4) the award of actual damages should reflect credit to Cornell for the half of each tree that was located on the Cornell's property, and (5) a new trial is required because the trial court failed to make a record of its view of the premises. Because the trial court correctly concluded that Otto established title by adverse possession, applied the proper rule in awarding actual damages, and awarded reasonable punitive damages, and because a new trial is not required even if the trial court viewed the premises, we affirm the judgment. Because the description contained in the judgment requires correction, we modify the judgment and remand this matter to the trial court with directions to correct the description in the judgment consistent with this opinion.

Otto and the Cornells are next-door neighbors living on adjoining lots A and 1 respectively. The deeds to the lots indicate that they are 50 feet wide and 150 feet long, lying between a street on the west and an alley on the east. Otto began renting the house on Lot A in 1931 and purchased the house and lot in 1948. For many years he maintained a fence on what he believed was the southern boundary of his lot and the northern boundary of lot 1. In 1945, after he removed the fence, Otto planted four maple trees to mark the boundary. Since then, Otto has mowed and maintained the lawn around these trees and to the north.

The house on lot 1 was rented to the Wilsons in 1949. Their driveway was located close to the trees that Otto planted and, in 1951, Mrs. Wilson hit one of the trees with her car and destroyed it. Otto planted another in its place. The Cornells bought lot 1 on a land contract in 1963 and obtained a warranty deed for the prop-

erty in 1970. After the land was surveyed in 1979, the Cornells first realized that the true lot line between their lot and Otto's lay between .7 feet and 7.2 feet north of the line on which Otto had planted the trees. Otto refused to accept the survey results and in 1980 filed suit to establish his title to the property up to the tree line. A few months later, Richard Cornell cut down the four trees that Otto had planted.

## ADVERSE POSSESSION

Otto based his claim to the disputed property on ch. 893, Stats., which allows a person in uninterrupted adverse possession for twenty years to commence an action to establish title. Section 893.25 (1), Stats. Adverse possession under this section requires enclosure, cultivation, or improvement of the land. Section 893.25 (2), Stats. It requires physical possession that is hostile, open and notorious, exclusive and continuous for the statutory period. *Leciejewski v. Sedlak,* 116 Wis. 2d 629, 636, 342 N.W.2d 734, 737 (1984). "Hostility" means only that the possessor claims exclusive right to the land possessed. *See Leciejewski v. Sedlak,* 110 Wis. 2d 337, 343, 329 N.W.2d 233, 236 (Ct. App. 1982). The subjective intent of the parties is irrelevant to the determination of an adverse possession claim. *Allie v. Russo,* 88 Wis. 2d 334, 347, 276 N.W.2d 730, 737 (1979). The requirement of continuity is satisfied by activities that are appropriate to seasonal uses, needs and limitations, considering the land's location and adaptability to such use. *Burkhardt v. Smith,* 17 Wis. 2d 132, 139, 115 N.W.2d 540, 544 (1962.) The true owner's casual reentry upon property does not defeat the continuity or exclusivity of an adverse claimant's possession. The true owner's reentry should be a substantial and material interruption and a notorious reentry for the purpose of dispossessing the adverse occupant. *See Frank*

*C. Schilling Co. v. Detry,* 203 Wis. 109, 115, 233 N.W. 635, 638 (1930).

The trial court's findings are sufficient to sustain its conclusion that Otto established title by adverse possession. The court found that Otto planted ornamental trees in 1945 and 1951 to establish the southern boundary of his lot; that at all times he claimed, maintained, and occupied the land around the trees; and that he posted a thermometer on one of the trees. The court found that the Cornells first became aware of where the platted boundary was located when the property was surveyed in 1979, and that Dorothy Cornell knew for seventeen years that Otto claimed the disputed property. The court made no finding that the Cornells used the disputed property.

The trial court's findings were not clearly erroneous and were sufficient to sustain its conclusion that Otto established title to the disputed property by adverse possession. *See* sec. 805.17(2), Stats., and *Leciejewski,* 110 Wis. 2d at 343, 329 N.W.2d at 236. Otto's acts in planting the ornamental trees more than twenty-five years before he commenced the lawsuit and in maintaining the land around the trees since then constituted possession of the land by usual improvement, *see Laabs v. Bolger,* 25 Wis. 2d 17, 22–24, 130 N.W.2d 270, 274 (1964), in the manner the true owner might have exercised possession of land of this character and location. Regardless of his subjective intent in occupying the land, Otto's possession was legally hostile, open, and notorious.

The trial court's findings also support the conclusion that Otto's possession of the disputed property was continuous and exclusive. The Cornells made no notorious reentry to dispossess Otto until after his adverse possession had been established. Although the Cornells

testified that they had used the property and were not aware that Otto claimed it until the lawsuit, they also testified that they gave different answers about the extent of their claim and their knowledge of Otto's claim in their pretrial depositions. The trial court may also have considered the Cornells' alleged activities, such as raking leaves and their children playing on the disputed strip, to be casual reentries. It was not necessary for Otto to treat the disputed property more protectively than he treated lot A to satisfy the requirement of exclusivity. He was not required to be belligerent if his neighbors happened to step across a particular line.

## ACTUAL DAMAGES

The Cornells argue that the trial court erroneously awarded damages based on the cost of replacing Otto's trees. They argue that damages could only be assessed based on the diminished value of Otto's land as a result of the destruction of the trees. We disagree.

In *Gilman v. Brown,* 115 Wis. 1, 8, 91 N.W. 227, 229 (1902), the supreme court held that the diminished land value rule was not exclusively applicable. In *Gilman,* shade and fruit trees near a farm residence and outbuildings were destroyed. *Id.* at 6, 91 N.W. at 229. In this case, the trial court found that Otto's trees were ornamental. This finding is not clearly erroneous. *See* sec. 805.17(2), Stats. The evidence indicated that the trees were planted in a row on a small residential lot. Otto maintained the lawn around the trees, and when one was damaged he replaced it. The trees could be ornamental even though they marked a boundary. Had Otto's sole purpose been to mark a boundary, he could have replaced the fence that existed before the trees, or he could have installed metal stakes or monuments. Otto's trees are more like those in *Gilman* than the timber

destroyed in *Miller v. Neale,* 137 Wis. 426, 119 N.W. 94 (1903), and *Nelson v. Churchill,* 117 Wis. 10, 93 N.W. 799 (1903).[1]

The supreme court in *Gilman* refused to restrict the trial court to the diminished land value rule. It stressed compensation for the injured party and noted that:

> An owner of real estate has a right to enjoy it according to his own taste and wishes, . . . yet the arrangement . . . [of buildings and trees] selected by him might be no considerable enhancement of the sale value of the premises, . . . and the disturbance of that arrangement, therefore, might not impair the general market value. . . . [W]hile the owner may be deprived of something valuable to him, . . . he might be wholly unable to prove any considerable damages merely in the form of the depreciation of the market value of the land. The owner of property has a right to hold it for his own use as well as to hold it for sale . . . .

*Id.* at 7–8, 91 N.W. at 229. This reasoning for an alternative rule is particularly persuasive in a case involving trees planted on a small residential lot like Otto's. The rule applied in *Gilman* was not explained and, as Cornell points out, was not labeled a "replacement value" rule. Since the supreme court did not explain the rule applied in *Gilman* or hold that it was the only proper rule, the trial court was not required to apply that rule. *Gilman's* significance is its holding that the diminished land value rule is not exclusive.

A modern case relying on *Gilman* supports the trial court's damage award. The Minnesota Supreme Court in *Rector, Wardens* and *Vestry of St. Christopher's*

---

[1] Cornell also cites *Brown v. Wisconsin-Minnesota Light & Power Co.,* 170 Wis. 288, 174 N.W. 903 (1919), in support of the diminished land value rule. That case involves an erroneous application of the diminished land value rule, *see id.,* at 293, 174 N.W. at 905, and does not discuss *Gilman* or any alternative to that rule.

*Episcopal Church v. C.S. McCrossan, Inc.*, 235 N.W.2d 609, 610–13 (Minn. 1975), held that the proper measure of damages is the cost of replacing ornamental or shade trees. That case also approved using more than one rule of damages when the replacement cost is unreasonable or excessive "in order to permit flexibility and achieve a just and reasonable result." *Id.* at 613. The holding in *Rector* is in harmony with and a logical application of *Gilman,* which is the last word in Wisconsin on this subject. We therefore adopt the *Rector* holding to the extent necessary to affirm the trial court's method of measuring Otto's damages.[2]

The Cornells are not entitled to credit for half the damage award even though the trial court set the boundary line through the center of the trees. Regardless of where the trial court set the boundary after the trees were cut down, Otto possessed both the trees and the land around the trees since the time he planted them. The trees belonged to Otto, and he was entitled to all the damage done to them.

## LAND DESCRIPTION IN THE JUDGMENT

Otto was not required to provide a metes-and-bounds description, and the evidence provided a reasonably accurate basis for the trial court to determine this boundary. *See Droege v. Daymaker Cranberries, Inc.,* 88 Wis. 2d 140, 146, 276 N.W.2d 356, 359 (Ct. App. 1979). The judgment describes the property as lying north of

[2] The trial court modified the cost of replacement method by limiting the per-tree damage to the cost of replacing the largest tree practical to replace. Although the court in *Rector* specified a modification by using the diminished land value rule, the trial court's method was consistent with the *Rector* objective of flexibility to achieve a just and reasonable result and was not error.

the line running through the center of the four stumps and extending to the street on one side and to a point forty-eight feet east of the street on the other.

Since the judgment does not necessarily provide for a straight line, however, it must be modified. A line drawn through the center of the four stumps might include angles if the two middle stumps deviate from a straight line between the outermost stumps. The evidence indicated that Otto intended to place the trees on the lot line, which was a straight line. In *Brockman v. Brandenburg*, 197 Wis. 51, 55, 221 N.W. 397, 398–99 (1928), a judgment was based on an old-fashioned "worm fence" made of overlapping rails with sections angling in a "zigzag" manner. The supreme court concluded that the adverse possessor only claimed title to the center of the area occupied by the fence and that the boundary should be set on the fence's center line. The same result is required in this case. We therefore modify the judgment so that the line is drawn through the center of the two end stumps, regardless of where the two middle stumps are located, and remand the cause with directions to the trial court to correct the description in the judgment consistent with this opinion.[3]

## PUNITIVE DAMAGES

The trial court did not award excessive punitive damages. After inferring that the Cornells possessed only minimal net worth, the trial court awarded Otto $1,000

---

[3] We also note that, as in *Brockman*, 197 Wis. at 55, 221 N.W. at 398, the description in the judgment, being based on tree stumps, is not a permanent one. As in *Brockman*, we suggest that the parties provide for a permanent description by metes-and-bounds that can be inserted in the judgment to provide a permanent settlement of the controversy. *See id.*

of the \$10,000 punitive damages demanded. The court did not find that the Cornells were without net worth, and their testimony that they planned to build a new garage indicates an ability to pay the award. Under the circumstances, the award serves the purpose of punitive damages and is not excessive. *See Fahrenberg v. Tengel,* 96 Wis. 2d 211, 235–36, 291 N.W.2d 516, 527 (1980).

## TRIAL COURT VIEW OF THE PREMISES

There is no need to remand this matter for a new trial. Although the trial court did state its intention to view the premises, it did not base its decision on the view, if a view was in fact made.[4] It merely indicated that it would reserve the right to reopen Otto's motion to amend his pleading to conform to the proof if, upon viewing the premises, it felt the layout was not as represented in court. After reopening, the court could have received further evidence, arguments, or motions by the parties.

*By the Court.*—Judgment modified and, as modified, affirmed and cause remanded with directions.

---

[4] The record does not reflect that the court actually viewed the premises either on its own or "ex parte." *See* Black's Law Dictionary 661 (rev. 4th ed. 1968).