COURT OF APPEALS
DECISION
DATED AND FILED

December 13, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1091**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV374

IN COURT OF APPEALS
DISTRICT III

---

JEFFREY E. THOMPSON,

    PLAINTIFF-RESPONDENT,

  V.

CHARLES F. MERONK AND MARVIN S. MERONK,

    DEFENDANTS-APPELLANTS.

---

APPEAL from a judgment of the circuit court for Marathon County: GREGORY B. HUBER, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Charles Meronk and Marvin Meronk, Sr., appeal from a judgment granting Jeffrey Thompson's claim for adverse possession over a

portion of land to which the Meronks held title. The Meronks contend that the circuit court erroneously failed to apply a presumption in their favor and that if the court had taken the presumption into account, the evidence was insufficient to support the verdict. We reject both contentions and affirm the judgment.

## BACKGROUND

¶2 In 1980, Anthony and Phyllis Delikowski entered into a land contract agreeing to sell a forty-acre parcel of land in Marathon County (the Thompson parcel) to ETCO Electric Supply, Inc. ETCO was a company owned by Thompson, his father and his brother. In 1982, the Delikowskis sold an adjoining forty-acre parcel of land just south of the Thompson parcel (the Meronk parcel) to the Meronks.[1] In 1984, the Delikowskis executed a warranty deed transferring title to the Thompson parcel to ETCO in satisfaction of the land contract. In 2002, ETCO, in turn, sold that parcel to Thompson, who was also an officer of the company throughout ETCO's ownership of the parcel.

¶3 At a bench trial on Thompson's adverse possession claim, Thompson testified that when ETCO purchased the Thompson parcel, there was a wire cattle fence setting apart a 3.867 acre portion (the disputed area) of what was later to become the Meronk parcel. The disputed area consisted mainly of wooded land along the north side of the Meronk parcel, where it adjoined the south side of the Thompson parcel. By the time of trial, the fence was in a very deteriorated condition, but still existed. Both ETCO and Thompson erroneously believed that

---

[1] The legal descriptions and surveys of each parcel and the boundaries of the area of land claimed to be adversely possessed are undisputed and need not be repeated here.

the fence constituted the boundary between the Thompson and Meronk parcels until a survey was completed in 2017.

¶4     Thompson further testified that he and ETCO exclusively used the disputed area of the Meronk parcel between 1980 and 2017 by hunting, building structures (including tree stands in the late 1990s), creating a trail system that connected to the Thompson parcel, mowing, tilling, planting seed, riding ATVs and snowmobiles, using cross-country skis and snowshoes, and tapping trees for maple sap.   Thompson estimated that he and ETCO and their invited guests continuously used the property over 100 days per year during that thirty-seven-year time period.   In 1996, Thompson also put up a "cable gate along the fence line, replacing a cable gate that the Meronks had previously put up.   The cable gate obstructed access to the disputed area from the rest of the Meronk parcel. Neither Thompson nor ETCO ever requested permission from the Meronks to use the disputed area, and Thompson did not see the Meronks ever using the area themselves.   Thompson introduced photographs of the cattle fence, cable gate, and trails.

¶5     Thompson's son-in-law, Matthew Palecek, testified that he had used the disputed area about fifty times beginning in 2000.   He had hunted on the disputed area with Thompson.   He had seen the cattle fence, and Thompson had told him that the fence was the dividing line between the Thompson and Meronk properties.   He had helped Thompson with several projects on the disputed area, including building structures, clearing brush, maintaining ATV trails, and planting seeds on food plots.   He had seen Thompson operate vehicles and tap maple trees on the disputed area.     Palecek had also seen Thompson and his guests cross-country skiing and snowshoeing on the disputed area, and he likewise had done so himself.

¶6      Both Thompson and Palecek also testified that, after the survey was done in 2017, which revealed that the disputed area was part of the Meronk parcel, the Meronks placed pieces of pipe across the trails to prevent access across the disputed area from the Thompson parcel.  The Meronks also removed the cable gate that had blocked access to the disputed area from the rest of their parcel.

¶7      Marvin, Sr., testified that the cattle fence was old—probably built in the 1920s or 1930s—and that he did not consider it to be the boundary between the Meronk parcel and the Thompson parcel.  He said that no one knew where the boundary was until he obtained a survey prior to cutting down trees.  Meronk claimed that he had hunted and cut wood on the disputed area, along with his son, brother, nephews and a cousin, and he did not see any tree stands, trails, or cable gates there any more recently than fifteen years prior.  He noted that he had personally installed a cable gate along the old fence line.

¶8      Marvin, Sr.'s son, Marvin Meronk, Jr., testified that he had hunted on the disputed area many times and did not see any other hunters, tree stands, or "four-wheelers" there.

¶9      Charles Meronk testified that he never believed the cattle fence was the property line because the fence was crooked, and he knew from the written description in the deed that his parcel was square.  He also testified that he had hunted and cut wood on the disputed area many times over the years.

¶10      The circuit court found that: (1) the Meronks had at some point placed a cable gate along the fence line rather than along the actual boundary line, and Thompson had replaced that gate in 1996, supporting Thompson's testimony that both parties treated the fence line as the boundary; (2) Thompson had created trails and built at least one permanent tree stand on the disputed area as

documented by photographs, and the Meronks' claim that they never saw the tree stand undermined the credibility of their assertions that they regularly had been using the disputed area themselves; (3) ETCO and Thompson had been regularly using the disputed area for recreational purposes including hunting, snowmobiling and maple sap collection for more than twenty years; and (4) the Meronks did not put up barriers along the actual property line or challenge ETCO's or Thompson's use of the disputed area until after the survey was done because they did not know where the actual boundary was before that time. The court concluded that Thompson had satisfied his burden of proving adverse possession. The Meronks now appeal.

## DISCUSSION

¶11     By statute, a person may acquire title to real property by adverse possession if the property is occupied for an uninterrupted period of twenty years. WIS. STAT. § 893.25(1) (2019-20).[2] Adverse possession requires the land to be actually occupied and either protected by a substantial enclosure or usually cultivated and improved. Sec. 893.25(2). To meet these requirements, a person claiming adverse possession must show that the disputed property was used for the requisite period of time in an "open, notorious, visible, exclusive, hostile and continuous" manner that would apprise a reasonably diligent landowner and the public that the possessor claimed the land as his or her own. *Pierz v. Gorski*, 88 Wis. 2d 131, 137, 276 N.W.2d 352 (Ct. App. 1979). "If the claimant's use gives the titleholder reasonable notice that the claimant is asserting ownership and the

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

titleholder does nothing, that failure to respond may result in losing title." *Peter H. and Barbara J. Steuck Living Tr. v. Easley*, 2010 WI App 74, ¶17, 325 Wis. 2d 455, 785 N.W.2d 631.

¶12    An adverse possession decision presents a mixed question of fact and law, requiring findings concerning the sequence of events and a conclusion as to the legal significance of those events. *Perpignani v. Vonasek*, 139 Wis. 2d 695, 728, 408 N.W.2d 1 (1987). A party seeking to claim title by adverse possession bears the burden of proving the elements of the claim by "clear and positive evidence." *Easley*, 325 Wis. 2d 455, ¶15. In addition, the circuit court must "strictly construe[]" the evidence against the party claiming adverse possession and apply "all reasonable presumptions" in favor of the title owner. *Id.* On review, we will sustain the circuit court's findings of fact unless they are clearly erroneous, but we will independently determine whether those facts are sufficient to establish an adverse possession claim under the applicable burden of proof. *Wilcox v. Estate of Hines*, 2014 WI 60, ¶15, 355 Wis. 2d 1, 849 N.W.2d 280.

¶13    The Meronks first contend that the circuit court failed to strictly construe the evidence against Thompson and to apply all reasonable presumptions in the Meronks' favor because the court found Thompson's testimony to be credible despite potential discrepancies with other testimony. For instance, the Meronks point to the conflict between Marvin, Sr.'s testimony that the replacement cable gate was not in place for more than fifteen years—i.e., before 2006—and Thompson's testimony that he installed the replacement gate in 1996. Along the same lines, the Meronks contend Palecek's testimony that he observed Thompson put up tree stands and helped to create and maintain trails means those tree stands and trails could not have been in place before 2000. However, these

and similar arguments made by the Meronks, confuse legal presumptions with credibility determinations.

¶14 Because the circuit court is in the best position to observe witness demeanor and gauge the persuasiveness of testimony, it is the "ultimate arbiter" for credibility determinations when acting as a fact finder, and we will defer to its resolution of discrepancies or disputes in the testimony and its determinations of what weight to give to particular testimony. *Johnson v. Merta*, 95 Wis. 2d 141, 151-52, 289 N.W.2d 813 (1980); *see also* WIS. STAT. § 805.17(2) ("[D]ue regard shall be given to the opportunity of the [circuit] court to judge the credibility of the witnesses."). This deference means that we will not overturn credibility determinations on appeal unless the testimony upon which they are based is inherently or patently incredible or in conflict with the uniform course of nature or with fully established or conceded facts. *Global Steel Prods. Corp. v. Ecklund*, 2002 WI App 91, ¶10, 253 Wis. 2d 588, 644 N.W.2d 269.

¶15 Thompson's testimony that he and his predecessor, ETCO, continuously used the disputed area between 1980 and 2017 by hunting, building tree stands, creating and maintaining a trail system that connected to the Thompson parcel, mowing, tilling, planting seed, riding ATVs and snowmobiles, using cross-country skis and snowshoes, and tapping trees for maple sap was not inherently incredible. It follows that the circuit court was entitled to make factual findings based upon Thompson's testimony—even if that testimony may have conflicted in some manner with other testimony. Thus, the court's findings that Thompson and ETCO had been using the disputed area for recreational purposes for over twenty years, that Thompson had erected tree stands and created and maintained trails on the disputed area, and that Thompson installed a replacement cable gate in 1996 blocking the Meronks' access to the disputed area across the

fence line along one of the trails, are not clearly erroneous. Those findings are the starting point for evaluating whether the court properly determined that Thompson established all the elements of his adverse possession claim by clear and positive evidence, overcoming all reasonable presumptions in the Meronks' favor.

¶16 The Meronks argue that the evidence was insufficient to show that Thompson's use of the disputed area was open, notorious, and visible because: (1) the cattle fence predated Thompson's use of the disputed area; (2) hunting and creating a trail on a wooded property were found not to be sufficiently obvious to apprise a true owner that someone was adversely using their land in *Easley*; and (3) the cable gate was not on the disputed area for more than fifteen years. However, the circuit court did not rely on the original building of the cattle fence as one of the open, notorious, and visible uses establishing adverse possession here. Rather, the court merely considered the fence as evidence establishing the boundary of the area in dispute. Additionally, there were several more types of use at issue here than merely hunting or maintaining trails. There was also testimony about planting food plots, which would be visible, and using ATVs and snowmobiles, which would be audible. Most significantly, erecting a gate to block access to the disputed area from the rest of the Meronk parcel clearly was an open, notorious, and visible use. We have already explained that the court was entitled to determine that Thompson's testimony as to when the replacement cable gate was installed was more credible than Marvin, Sr.'s testimony on that point.

¶17 The Meronks next argue that Thompson did not have the "substantive intent" for an adverse possession claim (which we understand to be an argument that Thompson and ETCO's use of the disputed area was not hostile) because Thompson removed a tree stand at the Meronks' request after the

8

completion of the survey—showing that Thompson's use was by permission. *See generally Northwoods Dev. Corp. v. Klement*, 24 Wis. 2d 387, 129 N.W.2d 121 (1964) (holding that possession with the permission of the true owner is consistent with use subservient to the true owner's rights and therefore not hostile). Aside from the problem that this assertion is based upon an allegation outside of the evidence produced at the evidentiary hearing,[3] it is immaterial because the twenty-year period of adverse possession had already been established by the time the survey was conducted and the tree stand was removed.

¶18 Finally, the Meronks appear to argue that Thompson and ETCO's use of the disputed area was not exclusive and continuous because the Meronks also hunted and gathered wood there. *See Otto v. Cornell*, 119 Wis. 2d 4, 7, 349 N.W.2d 703 (Ct. App. 1984) (holding that a true title owner's notorious re-entry can defeat the continuity or exclusivity of an adverse claimant's possession if the re-entry is a substantial and material interruption for the purpose of dispossessing the adverse occupant). The first problem with this argument is that the circuit court expressly found that the Meronks' claims to have regularly used the land themselves were not credible because, had they done so, they would have seen the tree stands and trails.

¶19 Moreover, just as "[a]cts which are consistent with sporadic trespass are insufficient to apprise a reasonably diligent owner of any adverse claim," *Pierz* 88 Wis. 2d at 137, a true owner's "casual" re-entry such as raking leaves or allowing children to play on the land is insufficient to apprise the adverse claimant

---

[3] The Meronks asserted that Thompson had removed a tree stand at their request in their answer to the complaint, not through testimony provided at the hearing.

that the true owner has re-established his or her dominion over the land, **Otto**, 119 Wis. 2d at 9. In other words, if Thompson and ETCO's hunting alone would not have been sufficient to establish adverse possession, the Meronks' alleged hunting was not sufficient to interrupt the period of adverse possession.

¶20 In sum, there was sufficient evidence for the circuit court to determine that Thompson and his predecessor had adversely possessed the disputed area in an open, notorious, visible, exclusive, hostile and continuous manner for a minimum of twenty years—from at least 1996 when the replacement cable gate was erected until 2017, when the survey was conducted. The court's determination did not impermissibly shift the burden of proof to the Meronks. Rather, the court properly determined that the evidence of adverse possession was sufficient to overcome the presumption in the title holders' favor

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.