BLAIR and another, Appellants, vs. MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Petitioner, Respondent. [Application by petitioner to condemn easements.]

*April 9—October 20, 1925.*

*Eminent domain: Electric power transmission line: Who determines necessity of taking: Width of right of way: Trimming trees: Change of route: Change after contract with private owner: Validity.*

1. Under the express provision of sub. (2), sec. 32.07, Stats., and aside therefrom, the determination of the necessity for taking a right of way for an electric power transmission line is for the petitioner, not for a court or jury.    p. 555.

2. Proceedings to condemn a right of way for an electric power transmission line are wholly statutory, the statute providing the controlling law of such proceedings.  p. 555.

3. Electric power, telephone, and telegraph lines being public utilities serving public needs, condemnation of a right of way therefor is not the taking of private property for private use. p. 555.

4. An electric company, after locating its right of way for a transmission line by survey, can relocate the line.  p. 555.

5. Sec. 193.11, Stats., limiting the width of the right of way of a street electric railway company to two rods for conveying current from its power house to its system, does not apply to an electric company condemning a right of way for its transmission line to furnish light, heat, and power to the public generally, sec. 32.02, which does not limit such width, governing such petition.  p. 556.

6. An electric company may cut down trees to provide reasonable clearance for its wires along its right of way.  p. 556.

7. An agreement between an electric company and a landowner, for a consideration, not to locate its power line over his land along the first survey, cannot be complained of by another landowner whose land is taken for such purpose, where he was fully paid for the damages sustained and it clearly appears that to locate the line as first surveyed would result in long litigation, and it was essential that the line be expeditiously located and built for the public interest.  p. 557.

APPEAL from a judgment of the county court of Waukesha county: DAVID W. AGNEW, Judge.  *Affirmed.*

Petition for the condemnation of certain tracts of land for a right of way for the construction of an electric transmission line.  The petition alleges:

"(1) Petitioner is a public-service corporation organized under the laws of Wisconsin owning and operating extensive electric utility systems for generation, transmission, sale, and distribution of electric energy.

"(2) That your petitioner is about to construct, as an addition to its electric utility system, an electric transmission line extending from a point in the town of Lake, Milwaukee county, Wisconsin, in a general westerly direction to the city of Whitewater, Walworth county, Wisconsin; that said line is to be used for public purposes as a part of your

petitioner's electric utility system; that said line has been duly located by the petitioner upon the route shown upon the map hereunto annexed and marked Exhibit 'A.'

"(3) That in order to construct, maintain, and operate the said line the certain easement hereinafter described is required for the purpose of the petitioner and it is necessary that the petitioner acquire said easement, and it is the intention of the petitioner in good faith to use said easement for the construction, maintenance, and operation of said line.

"(4) That the easement sought to be acquired consists of an easement for the erection, maintenance, operation, and replacement of an electric transmission line, consisting of steel towers, etc., eighty feet wide, to include the right to cut down trees, etc. That attached are maps marked tracts 1, 2, 3, 4, and 5, respectively showing . . . the several tracts of land over which said line has been duly located and laid out, upon which maps the center line of said transmission line is indicated by a dotted line."

Then follows a description of the several tracts sought to be condemned with the names of the owners of the same. The county court held petitioner was entitled to condemnation, and from a judgment entered accordingly the property owners, *Blair* and *Chafin,* appealed.

For the appellant *Blair* there was a brief by *Frame & Blackstone* of Waukesha, and oral argument by *H. J. Frame.*

*Herman R. Salen* of Waukesha, for the appellant *Chafin.*

For the respondent there were briefs by *Lockney, Lowry & Baird* of Waukesha, attorneys, and *James D. Shaw* of Milwaukee, of counsel, and oral argument by *Henry Lockney.*

The following opinion was filed May 12, 1925:

VINJE, C. J.    The appellant *Blair* contends that the judgment was erroneously entered for four reasons:

First, because the petitioner was permitted to determine the necessity for the taking. The claim is made that such

necessity should be determined by a court or jury. A suffi-
cient answer to this contention is that the statute, sub. (2),
sec. 32.07, provides that in the case of a condemnation for
an electric line the petitioner shall determine the necessity.
As was said in *Milwaukee E. R. & L. Co. v. Becker,* 182
Wis. 182, 196 N. W. 575, proceedings for condemnation
for a right of way, such as this, are wholly statutory, and
what the statute provides is the controlling law of such pro-
ceedings.    Aside from the statutory declaration that the
petitioner shall determine the necessity, it is obvious that
such must be the case, for electric power lines as well as
telegraph or telephone lines pass through many jurisdictions,
and were juries to determine the necessity, the jury in one
jurisdiction might find it necessary, while the jury in an-
other jurisdiction might find it unnecessary, and so the
project would be blocked no matter what the needs of the
public are with reference to the erection of such a line.
The right to condemnation springs from the fact that elec-
tric power lines, telephone lines, and telegraph lines are
public utilities and serve public needs, therefore it is not the
taking of private property for private use but for the public
use.

Second, it is claimed that, since the petitioner once located
this line by a survey, it cannot change its mind after such
survey is made and relocate it in another place. This posi-
tion is wholly untenable.    The statute gives the petitioner
the right to locate the line.    Such right includes the right
to change its mind with reference to where it shall go.    A
preliminary survey or a tentative selection of the line may
for many reasons have to be abandoned and the line put in
another place.    The statute permits a petitioner to refuse to
take property even after condemnation proceedings have
been completed and the damages assessed. Sec. 32.19. This
indicates clearly that the petitioner has an option as to

whether or not it will proceed to build its line upon any tentative survey or even upon a survey which it has considered as final.

The third objection is that the petitioner could acquire a right of way only thirty-two feet in width. This is claimed to be so because of the provision of sec. 193.11 which provides that a street electric railway corporation may acquire a right of way not exceeding two rods in width for the purpose of conveying or transporting electric current from the power house where the same is generated to the electric or street railway system operated thereby and for the purposes of furnishing light, heat, and power for public purposes. This applies only to street and electric railways and to the line from the power house to its system. It does not control the width of the right of way of the petitioner in this case, which is constructing a large power line for the purpose of furnishing light, heat, and power to the public generally. The statute governing the petition in this case is sec. 32.02, which does not limit the width of the right of way for the purpose here involved. It is evident that these large power lines could not successfully operate upon a width of only thirty-two feet. Their towers are high, have a wide base, large overhanging arms on which the wires are strung, and for their successful and safe operation, especially through woods, they require a much wider right of way than thirty-two feet. For this reason the statute has placed no limit upon the width of the right of way.

The fourth objection is that the petitioner has no right to cut down trees to provide a sufficient clearance for its wires. This objection was decided adversely to the appellant in *Brown v. Wisconsin-Minnesota L. & P. Co.* 170 Wis. 288, 174 N. W. 903, where it was held that where an electric line owned a right of way it had the right to make a reasonable clearance for its wires by the cutting or trimming of trees. To hold otherwise would be to jeopardize the efficient operation of the line and perhaps to subject

to greater peril the public or those who may have occasion to be on or near the wires, for it is a well known fact that, especially in wet weather, trees touching high-voltage electric wires transmit the current to the ground, where it may do damage to persons or property.

The objection of the appellant *Chafin* is that it appears from the evidence that the petitioner first located its line over the property of *Blair;* that *Mr. Blair* instituted proceedings for the purpose of preventing its location over his land, and that in the settlement of such proceedings the petitioner was paid a substantial sum, in consideration of which it agreed not to locate its line over the land of the appellant *Blair* as contemplated. The answer of the petitioner is that it was under a public necessity to expeditiously locate and construct its line because the public needed it. It appeared that *Mr. Blair* was a man of wealth and that he had fully determined to obstruct and to prevent if possible the location of the line along the survey first made over his land; that in order to end such litigation and to enable the petitioner to expeditiously locate and construct its line it did agree with *Blair* not to locate it as first surveyed. Had it been located as first surveyed it would not have crossed the land of *Mr. Chafin.* So the question presented is whether a petitioner condemning land for a right of way for an electric line can agree with one landowner for a consideration not to locate its line over his land as first contemplated and to relocate it. This question is not free from difficulty. If such an agreement is made without any valid reason and for the purpose of favoring one landowner as against another, it is quite probable that it might not be held to be valid and lawful. But where, as here, it clearly appears that in order to locate its line over *Mr. Blair's* land as first surveyed there would have to be a long litigation, and where as here it was essential that the line should be expeditiously located and built for the public interest, it cannot be said that such a settlement of the litigation can be complained of

by a landowner whose land is taken for the purpose of a right of way. *Mr. Chafin* has been paid in full for the damages he has sustained by reason of the taking. And it is deemed that the change of the location of a line for such a reason is justifiable. Many reasons may operate upon a petitioner for the lawful change of the location of a line. The right to locate it where the petitioner sees fit is granted by the statute, and unless this is arbitrarily or oppressively exercised no one has a right to complain of its ultimate location. In order to do so it must be shown that fraud or an unwarranted action operated to induce the petitioner to change the location of its line and that such change resulted in damage to the complaining landowner. This is not such a case. We think the petitioner's reason for making the settlement and changing the location of its line is one that the law must uphold.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on October 20, 1925.