Anna M. THRELFALL, and Richard V. Baum, Plaintiffs-Appellants,

v.

TOWN OF MUSCODA, Defendant-Respondent.

Court of Appeals

*No. 93–0286. Submitted on briefs December 3, 1993.—Decided December 8, 1994.*

(Also reported in 527 N.W.2d 367.)

For the plaintiffs-appellants the cause was submitted on the brief of *Anna M. Threlfall* and *Richard V. Baum*, pro se, of Madison.

For the defendant-respondent the cause was submitted on the brief of *Ivars Kalnins* of *Hoskins, Brown, Kalnins, McNamara & Vandehey* of Lancaster.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

GARTZKE, P.J. The plaintiffs, Anna Threlfall and Richard Baum, appeal from a judgment in favor of the Town of Muscoda (1) declaring that Sand Branch Road is four rods (sixty-six feet) wide where it crosses their property and that the Town's cutting trees and shrubs along the road has not damaged them, and (2) awarding costs to the Town.

The plaintiffs contend that the trial court erred (1) in applying the presumption in § 80.01(2), STATS.,[1] that an unrecorded highway that has been worked as a public highway ten years or more is a public highway presumed to be four rods wide, (2) in holding that the plaintiffs had failed to rebut the presumption, (3) in making certain findings of fact, (4) by disallowing damages based on the cost to replace trees and shrubs the Town had cut and in not awarding punitive damages, (5) in not rendering the declaratory judgment they sought, and (6) in not permanently enjoining the Town from future cutting.

We conclude that the trial court correctly applied the presumption, and that the plaintiffs rebutted the presumption and are entitled to compensatory damages in the form of restoration costs. We reverse and remand for the trial court to award damages, grant declaratory relief, reconsider the plaintiffs' request for an injunction, and award costs.

## I. BACKGROUND

Sand Branch Road is an east-west gravel road bisecting the plaintiffs' rural property for about one-half mile. Fences run most of its length on both the north and south sides where it crosses their land. The plaintiffs purchased the property in 1977.[2]

On September 15, 1986, Town employees cut down trees and shrubs south of the fence that runs along the south side of the road. The plaintiffs filed a complaint

---

[1] Section 80.01(2), STATS., contains two four-rod presumptions. When we refer to the presumption in § 80.01(2), we mean the first-stated presumption.

[2] Threlfall testified they lived on the property the second year they owned it. The record does not disclose whether they have lived on the property since then.

alleging that the Town had trespassed on their land and cut down their trees and shrubs. They contend that the right-of-way of the road, where it crosses their land, "consists of the travelled surface, shoulders and ditches, and in no event is wider than the ancient fence-lines." They sought damages, a judgment declaring the width of the road, temporary and permanent injunctions enjoining the Town from cutting trees or shrubs or altering fences on their property and a temporary restraining order pending the hearing on the temporary injunction. The trial court granted the temporary restraining order.

The plaintiffs moved for substitution of judge. The named judge denied the motion as untimely, held a bench trial and concluded that Sand Branch Road is four rods wide and the plaintiffs suffered no damage. The plaintiffs appealed. We concluded the substitution motion was timely, reversed the trial court's judgment and remanded for assignment of a different judge. *See Threlfall v. Town of Muscoda*, 152 Wis. 2d 308, 448 N.W.2d 274 (Ct. App. 1989). A different judge was assigned, and after a second bench trial, the trial court concluded that the four-rod presumption in § 80.01(2), STATS., applied, that the plaintiffs failed to rebut it, that the road is four rods wide and that the plaintiffs suffered no damage. The plaintiffs appeal.

## II. FOUR-ROD PRESUMPTION APPLICABLE

Sand Branch Road existed before the turn of the century, but no records or surveys have been found regarding its creation. The parties agree that the road is unrecorded. "All highways not recorded which have been worked as public highways 10 years or more are public highways, and are presumed to be 4 rods wide,"

with exceptions. Section 80.01(2), STATS.[3] None of the exceptions apply here.

The first question is whether the presumption applies to Sand Branch Road where it crosses the plaintiffs' property. Whether Sand Branch Road has been worked as a public road at least ten years turns on facts in existence before October 7, 1986, when the plaintiffs commenced this action. The trial court found, and neither party disputes, that the road is a public highway that has been used by the public and worked by the Town for more than twenty years before this action.[4] Because Sand Branch Road is an unrecorded highway that has been worked as a public highway for at least ten years, the trial court concluded that the four-rod presumption applies. Section 80.01(2), STATS.

The plaintiffs assert that in order for the four-rod presumption to apply, the Town must show that it worked the road and the public adversely used it, for the full four-rod width for ten years. Section 80.01(2), STATS., contains no such requirement. Under § 80.01(2), upon a town's showing that it maintained an unrecorded highway for ten years, the public's use of the road is presumed adverse and the landowner bears the burden of showing otherwise. *Ruchti v. Monroe*, 83 Wis. 2d 551, 557, 266 N.W.2d 309, 313 (1978). If the landowner does not show the use is permissive, the four-rod presumption arises, whether or not the town worked, or the public adversely used, a four-rod width.

[3] The presumption is applicable to all highways whether originally laid out by the town, established by dedication of the owners, or resulting from user. *Barrows v. Kenosha County*, 8 Wis. 2d 58, 62, 98 N.W.2d 461, 463 (1959).

[4] The record shows that the Town has worked the road since at least the 1940's.

 The Town worked Sand Branch Road as a public road for at least ten years prior to this suit and the plaintiffs did not show that the public's use of the road was permissive. The presumption created by § 80.01(2), STATS., applies. The road is presumed to be four rods wide.

The plaintiffs contend that the presumption works an unconstitutional taking here. Prior to enactment of the statutory presumption in 1951,[5] the width of a highway created by user was determined by the limits of the user, including any area beyond the travelled track used for purposes of the highway. *Nicolai v. Wisconsin Power & Light Co.*, 227 Wis. 83, 89, 277 N.W. 674, 677 (1938).[6] The plaintiffs assert that to apply the presumption to Sand Branch Road, the boundaries of which were established by the limits of the user before 1951, deprives them of absolute ownership of their land beyond the area actually used by the public up to a four-rod width, and conditions ownership on their ability to rebut the presumption. They argue that if the width established by the limits of the user is less than four rods but a landowner is unable to rebut the presumption, an unconstitutional taking occurs. Because we conclude that the plaintiffs have rebutted the presumption, we do not reach their constitutional argument.

### III. PRESUMPTION REBUTTED

The plaintiffs claim that the existence of "ancient fences" within the four-rod width rebuts the presump-

---

[5] Laws of 1951, ch. 380 created the presumption.

[6] The *Nicolai* rule still applies when a landowner rebuts the four-rod presumption.

tion that Sand Branch Road is four rods wide. To support its finding that the plaintiffs had failed to rebut the presumption, the trial court found that (1) a fence runs along the north side of the road and a second fence runs north of and parallel to that fence, (2) on portions of the south side of the road, remnants of three different fences are located at varying distances from the road, some of the wires being buried in the ground, and (3) a prior owner, Robbins, placed some fences with no specific attempt at establishing boundary lines, and other prior owners installed fences for convenience. Apparently on the basis of those findings, the court found that no specific and identifiable boundary fence line can be established to determine boundary lines of the road.

At this point of our discussion, the width of Sand Branch Road is not an issue. The question is only whether the plaintiffs produced evidence sufficient to rebut the presumption that the road is a four-rod highway. We conclude that they have.

■

Sand Branch Road is presumed to have been created by adverse use. *See Ruchti*, 83 Wis. 2d at 557, 266 N.W.2d at 313 (unexplained use of easement over enclosed, improved or occupied land for twenty years is presumed to be adverse). No evidence was offered to rebut that presumption. If a highway was established by user, the existence of an ancient fence along the highway within two rods of either side of the centerline is sufficient to rebut the presumption in § 80.01(2), STATS., that the width of the highway worked as a public highway ten years or more is four rods. *Barrows*, 8 Wis. 2d at 63, 98 N.W.2d at 464.

A registered land surveyor established the location of the fences, north and south of the road, to which the

trial court referred. His survey is in evidence and shows that the distance between the fence immediately north of the road and the fence segments along the south edge of the road[7] is less than four rods, except for a section of the road bordering an area north of the road identified by Threlfall as a quarry. The quarry fence is irrelevant to our review, because the Town does not claim that the road includes any part of the quarry.

No witness established the exact times any fence existed at any particular location. That omission is immaterial. The road has been fenced for many years and the fences closest to the road are very old. For example, Doris Sawyer, who lived on the farm from 1923 until 1942, testified that the fence south of the road and the fence immediately to the north of the road are in substantially the same location now as they were when she lived on the farm. She testified that her father cut brush, and hired others to cut brush, up to the fences to keep the fence lines clear.

Clifford Tracy, who rented the farm from 1948 to 1957, testified that during that period fences were on both sides of the road, and the Town never took them down. He testified that the fence immediately north of the road is presently in the same location as when he lived there, and that the south fence is approximately in the same location as when he lived there.

Franklin Robbins testified that when he bought the farm in the 1960's, recent fences and vestiges of old fence ran along both sides of the road for its entire length. When he acquired the property, there was just one north fence. It was still there when he sold the property to the plaintiffs. As part of his effort to

[7] The survey shows that the fence immediately south of the road is basically continuous except for a 700-foot gap midway between the east and west ends of the property.

upgrade the property he constructed a second fence north of that fence. He found it easier to run a new north fence along the edge of the field rather than pulling up the old fence, and did not intend to dedicate the land between the fences to the Town. Robbins's placement of the fence was not an attempt to establish a boundary line. He did not put in a fence below the quarry on the north side of the road, because to do so would have been difficult.

The segment of the south fence line beginning at the east end of the property running west to a driveway was the same when Robbins sold the farm as when he bought it. Robbins also testified that commencing at the west end of the property, vestiges of an old fence ran east along the south side of the road for approximately one-third the property's length. He testified that he ran fencing south of that old fence for convenience, not to establish a boundary line or to dedicate the land between the fences to the Town.

We conclude that the existence of the ancient fences within the four-rod width rebuts the statutory presumption that the road is four rods wide. *Barrows*, 8 Wis. 2d at 63, 98 N.W.2d at 464.

The trial court's finding that no specific and identifiable boundary fence line can be established to determine boundary lines of the road lacks support in the record. The finding is clearly erroneous.[8] Section 805.17(2), STATS.

---

[8] The trial court's finding that prior owners placed some fences with no attempt at establishing a boundary line and for convenience cannot apply to the boundaries established by the fence lines immediately north and south of the road because they all existed when Doris Sawyer lived on the farm prior to 1943.

██

The plaintiffs have established that, for the most part, fences run along both the north and south sides of the road. The southernmost of the northern fences is evidence that the northern edge of the road extends no further than that fence. The south fence is continuous except for approximately 700 feet, but its location in that interval can be easily extrapolated from the point where it terminates at 22.3 feet south of the center line of the road to the point where it continues and is 23.0 feet south of the center line, as shown on the survey. That a segment of the south fence and wire are down and buried at the west end of the property is immaterial. The fence is there, and it ranges between 17.9 and 19.0 feet south of the center line. Given the old age of the fences, the widest possible width of the road is determined by the location of the ancient fences immediately north and south of the road. The boundary lines of the road can be determined by a survey on the basis of those locations.

██

The plaintiffs contend that the road may be narrower than the boundaries established by the ancient fences. That may be true, but the record fails to show that the road is indeed narrower. The only reasonable inference is that the ancient fences mark the limits of the user. No reason exists to remand this case to take evidence that the road is indeed narrower than as defined by the ancient fences. We next turn to the issue of damages.

## IV. DAMAGES

The trial court found that the Town cut trees and shrubs south of the south fence. Because the south fence line establishes the southern boundary of the

road, the Town's destroying trees and shrubs beyond the fence was a trespass, and we reach the issue of damages. The plaintiffs claim that they are entitled to recover damages equal to the replacement cost of those trees and shrubs. The trial court found that although the replacement cost of the cut trees and shrubs is $2350, the items had no fair market value and their cutting increased the market value of the plaintiffs' land. It found that because the trees and shrubs were not ornamental and were not located on a small residential lot, the plaintiffs were not entitled to damages. We conclude that the plaintiffs are entitled to damages.

■

Because recovery in trespass is based on a wrongful invasion of a plaintiff's rights, the rule of damages adopted should more carefully guard against failure to compensate the injured party than against possible overcharge to the wrongdoer. *Gilman v. Brown*, 115 Wis. 1, 7, 91 N.W. 227, 229 (1902). In *Gilman* the supreme court said:

> *An owner of real estate has a right to enjoy it according to his own taste and wishes,* and the arrangement of buildings, shade trees, fruit trees, and the like may be very important to him . . . and the modification thereof may be an injury to his convenience and comfort in the use of his premises which fairly ought to be substantially compensated, and yet the arrangement so selected by him . . . might not meet the taste of others, and the disturbance of that arrangement, therefore, might not impair the general market value. *[W]hile the owner may be deprived of something valuable to him, . . . yet he might be wholly unable to prove any . . . depreciation of the market value of the land. The owner of property has a right to hold it for his own use . . . and . . . he should be compensated for an*

133

*injury wrongfully done him in that respect, although that injury might be unappreciable to one holding the same premises for purposes of sale.*

*Id.* at 7-8, 91 N.W. at 229 (emphasis added).

The plaintiffs valued their roadside trees and shrubs as aesthetic additions to their land. Threlfall testified that she envisioned the land as a wilderness homestead with a scenic tree-lined county road passing through it. She and her husband maintained a small prairie and trimmed and planted trees and wildlife shrubs to beautify the roadside. The Town does not dispute these claims.

The plaintiffs claim that as landowners they have a right to beautify and enjoy their property according to their tastes and values. They argue that the Town's trespass deprived them of value—the aesthetic enjoyment of their property—and increased market value does not compensate them for their loss.

The Town contends that because its trespass did not diminish the market value of the land, the plaintiffs suffered no damage, citing *Miller v. Neale*, 137 Wis. 426, 432, 119 N.W. 94, 97 (1909).[9] It claims that the present case is distinguishable from both *Gilman*, 115 Wis. 1, 91 N.W. 227, and *Otto v. Cornell*, 119 Wis. 2d 4, 349 N.W.2d 703 (Ct. App. 1984), asserting that the reasoning in those cases is "*premised* on relatively small areas near buildings and trees and shrubs [that were] ornamental and the bearers of fruit." (Emphasis added.) We disagree.

The *Gilman* court affirmed an award of damages to a farmer against a trespasser who destroyed the

---

[9] In *Miller* the supreme court stated that the true measure of damages to standing timber on a woodlot was the diminished land value caused by the injury to the timber. *Miller v. Neale*, 137 Wis. 426, 432, 119 N.W. 94, 97 (1909).

farmer's shade trees, fruit trees, bushes and other plants. The award was based on evidence of the value of the items destroyed, not on diminished land value. The *Gilman* court based its affirmance on a landowner's right to enjoy the use of his or her property and the importance of using a rule of damages that more carefully guards against failing to compensate an injured landowner than against possible overcharge to a wrongdoer. *Gilman*, 115 Wis. at 7, 91 N.W. at 229.

In *Otto*, we affirmed a trial court's award of damages based on a cost-of-replacement method for a trespasser's destruction of ornamental trees on a residential lot. We said that the *Gilman* court's reasoning for *an* alternative to the diminished-market-value rule "is particularly persuasive in a case involving trees planted on a small residential lot."[10] *Otto*, 119 Wis. 2d at 10, 349 N.W.2d at 707. We did not limit the application of an alternative rule of damages to small residential lots. In fact, we noted that the *Gilman* court "stressed compensation for the injured party." *Id.* Neither *Gilman* nor *Otto* supports the Town's suggestion that application of an alternative rule is narrowly limited.

The *Gilman* decision is consistent with the RESTATEMENT (SECOND) OF TORTS. That authority recognizes that in an "appropriate case" restoration damages may be recovered for harm to land. RESTATEMENT (SECOND) OF TORTS § 929 (1977) provides in relevant part:

---

[10] We noted that the *Gilman* court did not hold that the measure of damages it approved was the only alternative measure of damages available. *Otto v. Cornell*, 119 Wis. 2d 4, 10, 349 N.W.2d 703, 707 (Ct. App. 1984).

(1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for

> (a) the difference between the value of the land before the harm and the value after the harm, *or at [the landowner's] election in an appropriate case, the cost of restoration that has been or may be reasonably incurred.*

(Emphasis added.)

Application of a restoration rule is appropriate here because the diminished-market-value rule would leave the plaintiffs without a remedy for the Town's damage to their use of their property. To leave them without a remedy "would be to decide that by the wrongful act of another, [they] may be compelled to accept a change in the physical condition of [their] property, or else perform the work of restoration at [their] own expense." *See Heninger v. Dunn,* 162 Cal. Rptr. 104, 108 (Cal. Ct. App. 1980).[11]

We conclude that under the facts of this case, replacement costs are the same as reasonable restoration costs. We so conclude because the trial court adopted the Town's figure, which included the cost of delivering and planting the replacements, and

[11] Partly in reliance on RESTATEMENT (SECOND) OF TORTS § 929, the *Heninger* court decided that a landowner, whose land's market value increased as a result of the trespass, may recover restoration costs for trees destroyed on nonresidential real estate provided that restoration is practicable and the landowner presents evidence of a personal reason to restore the land to its former condition. *See Heninger v. Dunn,* 162 Cal. Rptr. 104, 107-08 (Cal. Ct. App. 1980).

although the plaintiffs offered evidence supporting a higher figure, they do not dispute the reasonableness of the adopted figure.[12]

The plaintiffs request that we instruct the trial court to make findings and render judgment on the issue of punitive damages. We decline to do so. Other than to make the request, the plaintiffs fail to argue the issue on appeal. An issue raised but not argued is deemed abandoned. *Reiman Assocs., Inc. v. R/A Advertising, Inc.*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 (Ct. App. 1981).

## V. PERMANENT INJUNCTION

The plaintiffs sought a permanent injunction prohibiting the Town from destroying or harming trees, shrubs and fences outside the boundaries of Sand Branch Road where it crosses their land. Because of its disposition on the merits, the trial court did not reach the issue of injunctive relief. We direct the court on remand to consider whether to grant the injunction in the form sought with respect to trees, shrubs, and fences lying outside the boundaries of Sand Branch Road established by the ancient fences.

## VI. COSTS

Because of our disposition, we reverse the trial court's award of costs to the Town, and remand to the trial court to award costs to the plaintiffs.

---

[12] The Town's figure assumed that a number of the replacement trees and shrubs would be smaller than those cut and included nothing for several trees.

*By the Court.*—Judgment reversed and cause remanded with instructions.