James M. GALLAGHER and Patricia A. Gallagher,
Plaintiffs-Appellants,

v.

GRANT-LAFAYETTE ELECTRIC COOPERATIVE n/k/a Scenic
Rivers Energy Cooperative, and Federated Rural
Electric Insurance Corporation, Defendants-
Respondents.

Court of Appeals

*No. 01–0233. Submitted on briefs July 9, 2001.—Decided
October 25, 2001.*

2001 WI App 276

(Also reported in 637 N.W.2d 80.)

118

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Frank M. Tuerkheimer* and *James A. Friedman* of *LaFollette Godfrey & Kahn* of Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Denis R. Vogel* of *Wheeler, Van Sickle & Anderson, S.C.* of Madison.

Before Vergeront, P.J., Roggensack and Deininger, JJ.

¶ 1. VERGERONT, P.J. James and Patricia Gallagher appeal the trial court order dismissing their claims of trespass and negligence against Grant-Lafayette Electric Cooperative.[1] Their claims arose out of the Cooperative's use of a herbicide[2] to clear trees and brush under its electric power line on the Gallaghers' property. We conclude the Cooperative's right-of-way easement included those steps reasonably necessary to maintain its power line and that the trial court erred in not correctly applying this standard in granting certain of the Cooperative's motions to exclude evidence. We also conclude that the trial court erred in deciding that damages for discomfort and annoyance

---

[1] Grant-Lafayette Electric Cooperative is now known as Scenic Rivers Energy Cooperative.

[2] The parties appear to agree that the chemical at issue here, "Spike™" may be called either a herbicide or a pesticide. We will use the term "herbicide" throughout.

are not available in an action for trespass. Accordingly, we reverse and remand as more specifically explained below.

## BACKGROUND

¶ 2. The Gallaghers maintain a dairy operation on a 135-acre farm in Darlington, Wisconsin. The Cooperative provided electric power to the Gallaghers through a power line, part of which runs along a tree line on the western border of the Gallaghers' property, and part of which runs along a tree line on the northern border. In applications for membership in the Cooperative, the Gallaghers granted the Cooperative "a reasonable right[-]of[-]way easement."[3] For purposes of this appeal, it is not disputed that in May 1996, Cooperative employees, using backpack sprayers, applied the chemical "Spike$^{TM}$" to trees and brush underneath the Cooperative's power line on the Gallaghers' property.

¶ 3. The Gallaghers' amended complaint alleged that the Cooperative entered their property without permission and applied the herbicide contrary to their explicit request. The complaint alleged the herbicide killed 130 trees, which served as a windbreak and source of shade for the cattle and added beauty to the property, other plants under the Cooperative's power line, and an adjacent clover field; and it also caused the death of five dairy cows that grazed on the area sprayed. The amended complaint asserted claims of negligence and intentional and negligent trespass, and sought compensatory and punitive damages.

¶ 4. The Cooperative's answer admitted that it had entered the Gallaghers' property and applied a

_____
[3] One application was signed by James and Patricia in 1976 and one was signed by James in 1989.

herbicide under its power line to control trees and brush, but denied entering the property without their consent, and denied that the Gallaghers had asked it not to spray herbicides on their trees. As an affirmative defense, the Cooperative asserted that it had a right to be on the premises and to remove trees and other vegetation under its power line.

¶ 5. The court's scheduling order set a jury trial for November 17, 1999, with dispositive motions due by August 16, 1999. Neither party filed dispositive motions by that date. On November 1, 1999, the parties each filed trial briefs and motions in limine pursuant to the scheduling order. Among other motions, the Cooperative sought to exclude evidence of trespass, evidence of damages within the right-of-way, and testimony regarding any "requirement" that it seek the Gallaghers' permission to apply a chemical to the right-of-way. The Cooperative's position was that it had a right-of-way on the Gallaghers' property based on eminent domain; it therefore had the right to act reasonably to maintain its right-of-way without the Gallaghers' consent and it had acted reasonably. One of the Gallaghers' motions in limine asked the court to exclude testimony of the Cooperative's expert witnesses that the Cooperative had the right to apply a herbicide or otherwise destroy the trees because, the Gallaghers asserted, the issue of the Cooperative's right was a legal one for the court to decide and not the proper subject of expert testimony.

¶ 6. On November 8, 1999, two days before the pretrial conference, the Cooperative filed a document entitled "Defendant's Reply Brief to Plaintiffs' Trial Brief and Defendant's Motion for Partial Summary Judgment Based Upon the Position Taken by Plaintiffs." In the motion for partial summary judgment, the Cooperative asked the court to rule as a matter of law

that the Cooperative had a right to maintain its power line and that no trespass occurred with respect to the maintenance within the right-of-way. The Cooperative also filed various factual submissions, some of which addressed the Gallaghers' motions in limine and some of which addressed the reasonableness of the Cooperative's conduct.

¶ 7. At the pretrial conference, in the course of deciding the parties' motions in limine, the court ruled that the Cooperative had the right to keep its easement clear of trees and brush by using herbicides even if the Gallaghers did not consent. It therefore granted the Cooperative's motion to exclude evidence of trespass, damages within the right-of-way, and the need for the Gallaghers' consent. This ruling made the Gallaghers' motion to exclude expert testimony on the Cooperative's right to apply herbicides or otherwise destroy the trees moot, since all the trees destroyed were within the right-of-way. The court also ruled that damages for annoyance and inconvenience were not available in the absence of a nuisance claim, which the Gallaghers were not asserting; and it ruled that the Gallaghers were not entitled to punitive damages for damages occurring outside the right-of-way if treble damages were available under Wis. Stat. § 182.017(5) (1999–2000).[4]

---

[4] Wisconsin Stat. § 182.017(5) provides:

(5) Tree trimming. Any such corporation which shall in any manner destroy, trim or injure any shade or ornamental trees along any such lines or systems, or, in the course of tree trimming or removal, cause any damage to buildings, fences, crops, livestock or other property, except by the consent of the owner, or after the right so to do has been acquired, shall be liable to the person aggrieved in 3 times the actual damage sustained, besides costs.

All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

¶ 8. Subsequently the parties agreed that the court's rulings on the motions in limine were tantamount to dismissal of the Gallaghers' claims for damages within the right-of-way, and they therefore stipulated to the entry of an order dismissing those claims with prejudice. They also stipulated to dismissal of the Gallaghers' claims for damages outside the right-of-way without prejudice, agreeing that if an appellate court reversed the trial court's order on the claims for damages within the right-of-way and remanded, the Gallaghers could re-file their claims for damages outside the right-of-way; but if the appellate court affirmed the order regarding damages within the right-of-way, those claims outside the right-of-way would be dismissed with prejudice.

¶ 9. The Gallaghers appealed the order dismissing their claims for damages within the right-of-way. We dismissed that appeal, concluding that *Cascade Mountain, Inc. v. Capitol Indem. Corp.*, 212 Wis. 2d 265, 569 N.W.2d 45 (Ct. App. 1997), applied. We held in *Cascade Mountain* that a party could not, by stipulating to the entry of a conditional judgment, obtain a mandatory appeal of an interlocutory order. *Id.* at 269.

¶ 10. Following the dismissal of that appeal, the Gallaghers moved the trial court to dismiss with prejudice the claims for damages outside the right-of-way. The court granted the motion and entered an order dismissing those claims with prejudice.

## DISCUSSION

¶ 11. On this appeal, the Gallaghers assert the trial court erred in concluding that the Cooperative had a right to destroy with herbicides the trees and other vegetation within its right-of-way without the Gallagh-

124

ers' consent. They also contend they are entitled to damages for discomfort and annoyance on their trespass claim, and to either treble damages under Wis. Stat. § 182.017(5) or punitive damages for the destruction of the trees and plants within the right-of-way. Before addressing these issues, we address the Cooperative's argument that we must dismiss this appeal for the same reason we dismissed the prior appeal. We conclude that neither the dismissal of the prior appeal nor *Cascade Mountain* precludes the Gallaghers from pursuing this appeal.

¶ 12. We dismissed the prior appeal because the Gallaghers had consented to a dismissal without prejudice of the claims for damages outside the right-of-way, with the condition that they could reinstate those claims if we reversed the trial court's decisions with respect to the claims for damages within the right-of-way. Applying *Cascade Mountain*, we concluded the order resulting from their conditional stipulation was not a final order within the meaning of Wis. Stat. § 808.03(1). In contrast, the order the Gallaghers now appeal is final because it dismisses the claims for damages outside the right-of-way with prejudice, and there is no stipulation permitting the Gallaghers to reinstate these claims. An appeal of that final order brings before this court all prior non-final orders and all rulings adverse to the Gallaghers that have not been previously appealed and ruled upon. Wis. Stat. Rule 809.10(4). Therefore, the Gallaghers have the right on this appeal to challenge the rulings the trial court made before dismissing their claims for damages within the right-of-way.

*Scope of Cooperative's Easement*

¶ 13. Turning now to the Gallaghers' claims of error, we consider first the trial court's ruling that the Cooperative had the right to destroy the trees and other vegetation within its right-of-way by a herbicide without the Gallaghers' consent. The Gallaghers argue that we should review this ruling de novo, and conclude that the Cooperative's easement gave it the right to cut and trim trees and brush within the right-of-way as reasonably necessary to prevent interference with the power line, but not the right to destroy all vegetation within the right-of-way. Therefore, the Gallaghers continue, the Cooperative could use herbicides to destroy that vegetation only if the Gallaghers consented, and that, they say, presents a factual dispute which requires a jury trial.

¶ 14. The Cooperative responds that it has the right, by virtue of its easement, to take the steps reasonably necessary to maintain its power line and that may include using herbicides without the Gallaghers' consent. The Cooperative urges that we review the trial court's decision as one granting a motion for summary judgment and conclude that the undisputed facts are that its use of a herbicide within the right-of-way was reasonably necessary.

¶ 15. In spite of their differing frameworks, both parties agree that we must decide whether the trial court used the correct legal standard in ruling that the Cooperative's easement gave it the right to apply herbicides within its right-of-way to destroy trees and other vegetation. Whether the trial court applied the correct legal standard is a question of law, which we

review de novo. *Carney v. Mantuano*, 204 Wis. 2d 527, 532, 554 N.W.2d 854 (Ct. App. 1996).

¶ 16. An easement is an interest in land which is in the possession of another, creating two distinct property interests: the dominant estate, which enjoys the privileges granted by the easement, and the servient estate, which permits the exercise of those privileges. *Atkinson v. Mentzel*, 211 Wis. 2d 628, 637, 566 N.W.2d 158 (Ct. App. 1997). An easement may be created in a number of ways, including by a written grant,[5] by prescription—adverse use of another's property that meets certain criteria[6]—and by condemnation by entities that have the power to condemn under Wis. Stat. § 32.02.[7] In this case, the parties appear to disagree on how the Cooperative's easement was created, as well as on the scope of the easement.[8] The Gallaghers classify the easement as a prescriptive easement and appear to question whether the membership agreement grants an easement, but they do not explain why it does not. The Cooperative does view the membership agreement as granting it an easement, but also argues that it has an easement pursuant to its condemnation authority.[9]

---

[5] *Stoesser v. Shore Drive P'ship*, 172 Wis. 2d 660, 666 n.3, 494 N.W.2d 204 (1993).

[6] *Ludke v. Egan*, 87 Wis. 2d 221, 230, 274 N.W.2d 641 (1979).

[7] *See Klump v. Cybulski*, 274 Wis. 604, 613, 81 N.W.2d 42 (1957) (discussing a power company's acquisition of an easement by condemnation).

[8] The parties do not dispute the location or dimensions of the Cooperative's right-of-way easement.

[9] The Gallaghers object to the Cooperative's condemnation argument because the Cooperative did not plead it as an

¶ 17. We agree with the Cooperative that the only reasonable interpretation of the membership agreement is that it grants the Cooperative a right-of-way easement and that at least one purpose of the easement is for the placement and maintenance of power lines. Since the membership agreement does not provide any detail on the scope of the easement, we apply the principle that every easement carries with it by implication the right to do what is reasonably necessary for the full enjoyment of the easement in light of the purpose for which it was granted. *Atkinson*, 211 Wis. 2d at 640. Applying that principle, we conclude that the Cooperative's easement includes the right to take those steps that are reasonably necessary to maintain its power line on the Gallaghers' property.[10]

¶ 18. The courts have recognized that properly and safely maintaining power lines involves keeping the wires clear of interference, in the context of an easement acquired by condemnation. In *Blair v. Milwaukee Elec. Ry. & Light Co.*, 187 Wis. 552, 556–57, 203 N.W. 912 (1925), the court held that when an electric company has a right-of-way, it has the right to make a reasonable clearance for its wires by cutting down and trimming trees. "To hold otherwise," the court noted, "would be to jeopardize the efficient operation of the line and perhaps to subject to greater peril the public or

---

affirmative defense, it was first raised in the Cooperative's trial brief, and the trial court did not rule on it.

[10] Because we conclude the membership agreement created an easement and because the parties do not explain how the manner in which the easement was created affects our analysis of the scope of the easement in this case, we do not decide whether an easement was created under the parties' other theories.

those who may have occasion to be on or near the wires, for it is a well known fact that, especially in wet weather, trees touching high-voltage electric wires transmit the current to the ground, where it may do damage to persons or property." *Id.*; *see also Klump v. Cybulski*, 274 Wis. 604, 613–14, 81 N.W.2d 42 (1957) (holding the easement a power company acquires by condemnation may include the right to cut down trees to provide sufficient clearance for its wires). The reasoning of these cases leads us to conclude that the Cooperative's right to take the steps reasonably necessary to maintain its power line on the Gallaghers' property includes steps reasonably necessary to keep trees and other vegetation from interfering with the wires.

¶ 19. To the extent the Cooperative is arguing that it is always, as a matter of law, reasonably necessary for a power company to clear all the trees and vegetation from its right-of-way in order to maintain its power line and prevent interference with the wires, we disagree. The Cooperative relies on *Peterson v. Lake Superior Dist. Power Co.*, 255 Wis. 584, 39 N.W.2d 706 (1949). There the court held that an action for trespass lay against the power company for clearing land, by cutting brush and trees, beyond the original area consented to, but not for clearing land by cutting within the original area. *Id.* at 587. According to the Cooperative, *Peterson* means that it has the right to completely clear all the trees and brush within its right-of-way. However, in *Peterson* the easement was created by "permission or tacit consent," and the court did not address whether that permission or tacit consent included the right to clear the original area. Since we are unable to tell from the decision whether it did or did not, we decline to read *Peterson* as authority for the

129

Cooperative to clear its right-of-way of all trees and brush regardless of whether that is reasonably necessary for the purpose of its easement.

¶ 20. Similarly, if the Cooperative is arguing that courts are to defer to the judgment of a power company as to what is reasonably necessary to maintain its power lines and prevent interference with the wires, we do not agree the law requires that. When the court in *Klump* stated, "A court will not interfere with the choice unless necessary to prevent an abuse of discretion . . .," it was referring to the choice of where to locate the power lines and to the case law requiring deference to that choice because of the statute giving the power company, as petitioner in the condemnation proceeding, the right to determine the necessity of the taking. *Klump*, 274 Wis. at 612. We do not read *Klump* to require that we apply a more deferential standard than "reasonably necessary" to the Cooperative's decision to use a herbicide to clear trees and brush from under its power line.

¶ 21. As we have already noted, the Gallaghers acknowledge that the Cooperative's easement permits it to cut and trim trees and other vegetation within the right-of-way as reasonably necessary to prevent interference with the power line; but, they contend, it is not reasonably necessary, as a matter of law, to use a herbicide to clear all the trees and other vegetation within the right-of-way—in other words, the Cooperative may not do so without their consent. They rely on cases from other jurisdictions, but none, we conclude, support their position. In the cases holding that a power company's cutting down trees exceeded its authority, the fact finder had determined that removal was not necessary, *Segraves v. Consolidated Elec. Coop.*, 891 S.W.2d 168, 171–72 (Mo. Ct. App. 1995), or was not

130

reasonably necessary. *Lamar County Elec. Coop. Ass'n v. Bryant*, 770 S.W.2d 921, 923 (Tex. App. 1989). In the cases holding that use of herbicides was not permitted, the courts were interpreting specific language in written grants of easement: *Kell v. Appalachian Power Co.*, 289 S.E.2d 450, 456 (W. Va. 1982) (also focusing on the danger of drift in the aerial application of herbicide); *Stirling v. Dixie Elec. Membership Corp.*, 344 So. 2d 427, 429 (La. Ct. App. 1977) (also stating that application of the herbicide applied by means other than a helicopter and on a more selective basis might have been permitted by the language); *Dwiggins v. Propst Helicopters, Inc.*, 832 S.W.2d 840, 843 (Ark. 1992); *Grimm v. Cooperative Elec. Power & Light Co.*, 272 P.2d 1052, 1053–54 (Kan. 1954).[11]

¶ 22. None of the cases cited by the Gallaghers suggest that the use of a herbicide that is not aerially applied, but is applied to clear all the trees and other vegetation from the right-of-way, is never reasonably necessary to maintain a power line and prevent interference with the wires. We conclude that whether the Cooperative's application of the herbicide was reasonably necessary for that purpose depends upon the particular facts and circumstances of this case.

■

¶ 23. It appears the trial court did not apply this standard, but instead concluded that the Cooperative

---

[11] The Gallaghers also cite *Boss v. Rockland Elec. Co.*, 468 A.2d 1055, 1057–58, 1060, (N.J. 1983). There the court interpreted the language in the grant of easement ("the right to cut and keep cut the trees shrubbery and underbrush, as may be necessary . . .") to include "selective removal"—removal of any tree in the right-of-way that had the capacity to grow to the height of the wires. However, the court did not hold that the language did not permit anything more than selective removal.

could use a herbicide to clear all the trees and other vegetation within its right-of-way even if that were not reasonably necessary to maintain its power line and prevent interference with the wires. Based on this conclusion, the trial court excluded evidence of trespass, of damages within the right-of-way, and of the need for the Gallaghers' consent to apply a herbicide to the right-of-way. Although the decision whether to exclude evidence involves the exercise of discretion, *Henning v. Ahearn*, 230 Wis. 2d 149, 178, 601 N.W.2d 14 (Ct. App. 1999), if the exercise of discretion is based on an incorrect legal standard, it is an erroneous exercise of discretion. *King v. King*, 224 Wis. 2d 235, 248, 590 N.W.2d 480 (1999).

¶ 24. Whether the Cooperative committed trespass depends on whether it exceeded the scope of its easement, *see Peterson*, 255 Wis. at 587, and, in this case, that requires a factual determination of whether the Cooperative's conduct was reasonably necessary to maintain its power line. Therefore, the court erroneously exercised its discretion in excluding evidence of trespass at trial. The same is true of evidence of damages within the right-of-way.

¶ 25. We do not agree with the Cooperative's position that we should apply the correct legal standard to the submissions before the trial court at the pretrial conference and affirm using summary judgment methodology.[12] The Cooperative's "motion for partial summary judgment" was not filed within the time set by the

[12] The methodology of the trial court and this court on a motion for summary judgment is the same. We first examine the complaint to determine whether it states a claim, and then the answer to determine whether it presents a material issue of fact. *Brownelli v. McCaughtry*, 182 Wis. 2d 367, 372, 514 N.W.2d

132

scheduling order and did not comply with the notice requirements for summary judgment motions.[13] The record does not support the Cooperative's assertion that the Gallaghers acquiesced to the court deciding a motion for partial summary judgment. The Gallaghers' counsel did not agree at the pretrial conference that consideration of the Cooperative's motion for partial summary judgment was proper, but asserted instead that that the issue the Cooperative wanted to raise in that motion was more appropriately addressed in the motions in limine, and the court proceeded to decide those motions.[14] The affidavits and deposition transcripts the Gallaghers had submitted before the pretrial were in support of their motions in limine and included deposition transcripts showing the testimony they wanted *excluded;* thus, at the pretrial conference the court did not have before it affidavits or other factual

48 (Ct. App. 1994). If they do, we then examine the moving party's affidavits to determine whether that party has made a prima facie case for summary judgment. *Id.* If it has, we then look to the opposing party's affidavits to determine whether there are any material facts in dispute which entitle the opposing party to a trial. *Id.* at 372–73.

[13] WISCONSIN STAT. § 802.08(2) provides in part:

MOTION. Unless earlier times are specified in the scheduling order, the motion shall be served at least 20 days before the time fixed for the hearing and the adverse party shall serve opposing affidavits, if any, at least 5 days before the time fixed for the hearing.

[14] The fact that the Gallaghers later stipulated that the court's ruling on certain of the motions in limine were "tantamount to a dismissal of [their] claims for damages within the right-of-way" does not mean the Gallaghers consented to the court's consideration of the Cooperative's submissions on issues of fact raised in its motion for partial summary judgment.

133

materials from the Gallaghers that disputed the Cooperative's factual premises for partial summary judgment. Contrary to the Cooperative's assertion, it was not incumbent upon the Gallaghers to submit such materials before or at the pretrial in opposition to a motion that was untimely and lacked the statutory notice, unless either the Gallaghers agreed or the court so ordered—neither of which occurred.[15]

¶ 26. Because the court erroneously excluded evidence of trespass and damages within the right-of-way, and that exclusion was the basis for the dismissal of the Gallaghers' claims for damages within the right-of-way, we are satisfied that the proper course is to reverse the dismissal of those claims and remand for trial on the Gallaghers' claims for trespass and negligence, which will include a trial on the issue of whether the Cooperative's use of a herbicide was reasonably necessary to maintain its power line.[16] On remand, the court shall reconsider in light of our decision the Cooperative's motion to exclude evidence of the need for the Gallaghers' consent, and any other motions in

[15] For these same reasons, even if the trial court did apply the correct "reasonably necessary" standard and decided that there were no undisputed facts based on the record before it, we would reverse and remand, because the Gallaghers did not have an opportunity to submit factual materials showing that the Cooperative's application of the herbicide was not reasonably necessary.

[16] The Gallaghers inform us in their brief that the issue with respect to negligence is essentially the same as that for trespass—whether the Cooperative had a legal right to do what it did.

limine that are affected by our decision on the legal standard for determining the scope of the Cooperative's easement.

*Damages for Discomfort and Annoyance*

¶ 27.　The Gallaghers contend the trial court erred in ruling that they could not recover damages for discomfort and annoyance because they did not plead a nuisance claim. They assert that they may recover these damages on their trespass claims, relying on RESTATEMENT (SECOND) OF TORTS § 929(1) (1979):[17]

§ 929. Harm to Land from Past Invasions.

(1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for

(a) the difference between the value of the land before the harm and the value after the harm, or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred,

(b) the loss of use of the land, and

(c) discomfort and annoyance to him as an occupant.

¶ 28.　The Gallaghers acknowledge that the only Wisconsin cases that have expressly allowed damages for discomfort and annoyance have been actions for

___

[17] The Gallaghers also refer to their negligence claim in this argument section, but they develop an argument only with respect to trespass. Therefore, we confine our discussion and holding to trespass claims. *See Fritz v. McGrath*, 146 Wis. 2d 681, 686, 431 N.W.2d 751 (Ct. App. 1988) (we do not consider arguments broadly stated but never specifically argued).

135

nuisance. *Vogel v. Grant-Lafayette Elec. Coop.*, 201 Wis. 2d 416, 434, 548 N.W.2d 829 (1996);[18] *Andersen v. Village of Little Chute*, 201 Wis. 2d 467, 481–83, 549 N.W.2d 737 (Ct. App. 1996). However, they argue that nothing in those cases suggests those damages are not available in trespass cases. They also point out that in *Threlfall v. Town of Muscoda*, 190 Wis. 2d 121, 135–36, 527 N.W.2d 367 (Ct. App. 1994), we allowed damages for restoration costs in a trespass action, specifically noting that this was consistent with RESTATEMENT (SECOND) OF TORTS § 929(1)(a). The Gallaghers contend there is no reason to apply one subsection of § 929(1) to a trespass action but not another.

¶ 29. We agree with the Gallaghers that nothing in either *Vogel* or *Andersen* suggests a reason not to allow damages for discomfort and annoyance in a trespass action. Neither does *Threlfall*. Indeed, our reasoning in *Threlfall* for allowing damages for restoration in a trespass action provides a solid rationale for applying RESTATEMENT (SECOND) OF TORTS § 929(1)(c) as well as subsection (a) in trespass actions. Citing the prior case of *Gilman v. Brown*, 115 Wis. 1, 7, 91 N.W. 227 (1902), we stated that "[b]ecause recovery in trespass is based on a wrongful invasion of a plaintiff's rights, the rule of damages adopted should more carefully guard against failure to compensate the injured party than against possible overcharge to the wrong-

[18] The court in *Vogel v. Grant-Lafayette Elec. Coop.*, 201 Wis. 2d 416, 434, 548 N.W.2d 829 (1996), uses the term "annoyance and inconvenience," as did the trial court in this case. For purposes of this appeal, we attach no significance to the difference between "annoyance and inconvenience" and "discomfort and annoyance."

136

doer," *Threlfall*, 190 Wis. 2d at 133, and we noted the importance of being able to enjoy the real estate one owns. *Id.* at 135.

¶ 30. The Cooperative's objections do not provide a reasoned basis for distinguishing between nuisance and trespass actions with respect to the application of RESTATEMENT (SECOND) OF TORTS § 929(1)(c). First, the Cooperative argues there has been no trespass. However, we have held that issue must be tried: the Cooperative's belief that the Gallaghers will not succeed in proving trespass is not a reason not to allow damages for discomfort and annoyance if they do succeed. Second, citing *Kleinke v. Farmers Coop. Supply & Shipping*, 202 Wis. 2d 138, 549 N.W.2d 714 (1996), the Cooperative argues that damages may not be awarded for emotional distress based on property damage alone. However, *Kleinke* is inapposite. *Kleinke* involved a claim for negligent infliction of emotional distress arising out of negligent damage to property, and the court held that public policy grounds precluded recovering for emotional distress in that situation. *Id.* at 145–46. We are not here concerned with a claim for negligent infliction of emotional distress, but with a claim for trespass, and the question is: why should damages for discomfort and annoyance to the occupant of land be available when past invasion causing harm to the land constitutes a nuisance, but not when past invasion causing harm to the land constitutes a trespass?

¶ 31. The claim of trespass in this case involves a past invasion and harm of the Gallaghers' land. There is nothing in the wording of RESTATEMENT (SECOND) OF TORTS § 929 that suggests that it applies to claims for nuisance and not to claims for trespass. Nor do the comments indicate that § 929 is restricted to nuisance

137

claims. The comments to subsection (1)(a)[19] and (2)[20] specifically refer to trespass, and, although the comment to subsection (1)(c) does not specifically refer to trespass, it is consistent with trespass claims as well as nuisance claims.[21] We also observe that a number of

[19] RESTATEMENT (SECOND) OF TORTS § 929 cmts. a and b (1979) provide in part:

> a. . . . . In some cases the measure of recovery may include an amount for depreciation in market value although there has been no substantial physical harm, as when a test well is bored by a *trespasser* and proved to be dry, and as a result the land loses its value as an oil prospect.
>
> . . . .
>
> b. . . . . If, however, the cost of replacing the land in its original condition is disproportionate to the diminution in the value of the land caused by the *trespass* . . . . (Emphasis added.)

[20] RESTATEMENT (SECOND) OF TORTS § 929 cmt. g provides:

> g. Severance. . . . An innocent *trespasser* is entitled to the diminution of the damages to the extent that his labor or expenses added to the value of the things severed when suit has been brought for their value. This distinction between the innocent and the wilful *trespasser* is consistent with the rule stated in § 927, Comment f, on the contrasting liabilities of innocent and of guilty converters when additions have been made to the converted chattels. Statutes in some states permit double or treble damages against a wilful *trespasser.* (Emphasis added.)

[21] RESTATEMENT (SECOND) OF TORTS § 929 cmt. e provides:

> Discomfort and annoyance to an occupant of the land and to the members of the household are distinct grounds of compensation for which in ordinary cases the person in possession is allowed to recover in addition to the harm to his proprietary interests. He is also allowed to recover for his own serious sickness or other substantial bodily harm but is not allowed to recover for serious harm to other members of the household, except so far as he maintains an action as a spouse or parent, under the rules stated in §§ 693 and 703. The owner of land who is not an occupant is not

jurisdictions, either based on their own common law or on § 929(1)(c), have recognized that damages for discomfort and annoyance are available in actions for trespass.[22] We have found no case, and the Cooperative has provided us with none, in which a court in another jurisdiction has refused to apply § 929(1)(c) because the claim is trespass rather than nuisance.

¶ 32. Accordingly, we adopt RESTATEMENT (SECOND) OF TORTS § 929(1)(c) as a correct statement of damages available in trespass cases that meet the requirements of § 929(1). We conclude that the trial court's ruling excluding evidence of discomfort and annoyance because the Gallaghers had not pleaded a nuisance claim was based on an incorrect legal standard and must be reversed. We do not decide what evidence is admissible to prove discomfort and annoyance; that is an issue the trial court may consider on remand.

entitled to recover for these harms except as they may have affected the rental value of his land.

[22] *Hassoldt v. Patrick Media Group, Inc.*, 100 Cal. Rptr. 2d 662, 676 (Cal. Ct. App. 2000); *Webster v. Boone*, 992 P.2d 1183, 1185–86 (Colo. Ct. App. 1999), *Burt v. Beautiful Savior Lutheran Church of Broomfield*, 809 P.2d 1064, 1069 (Colo. Ct. App. 1990); *Lanier v. Burnette*, 538 S.E.2d 476, 480 (Ga. Ct. App. 2000); *Hartle v. Nelson*, 15 P.3d 484, 488 (Mont. 2000); *French v. Ralph E. Moore, Inc.*, 661 P.2d 844, 847–48 (Mont. 1983); *Lunda v. Matthews*, 613 P.2d 63, 67 (Or. Ct. App. 1980); *Walker Drug Co. v. La Sal Oil Co.*, 972 P.2d 1238, 1246 (Utah 1998); *see also Houston v. Texaco, Inc.*, 538 A.2d 502, 505 (Pa. Super. Ct. 1988) (plaintiffs claiming injury to real property the result of defendant's negligence)

139

*Damages under WIS. STAT. § 182.017(5)*

¶ 33. The trial court did not decide whether treble damages are available to the Gallaghers under WIS. STAT. § 182.017(5) for damages within the right-of-way because of the incorrect legal standard it applied to determine the scope of the Cooperative's easement. On appeal, the Gallaghers note that they have dismissed with prejudice their claims for damages outside the right-of-way and they ask us to rule either that: (1) treble damages under the statute are available for their losses within the right-of-way; or (2) if treble damages are not available, then punitive damages are. The Cooperative responds that we should not decide whether the statute applies to losses within the right-of-way because the trial court did not address that issue and the trial court will need to make factual determinations before the question of the statute's applicability within the right-of-way can be resolved. The Gallaghers do not reply to this assertion in their reply brief, or make any argument with respect to § 182.017(5) in that brief. We therefore take this as a concession that we should not decide the applicability of § 182.017(5). *See Schlieper v. DNA*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994).

## CONCLUSION

¶ 34. We hold that the Cooperative's easement includes the right to take those steps reasonably necessary to maintain its power line, which includes the right to take those steps reasonably necessary to prevent interference with the wires. Accordingly, its use of a herbicide to clear all the trees and vegetation from under the power line was within the scope of its

easement only if it met this standard. Because the trial court applied an incorrect legal standard in excluding evidence on trespass, on damages within the right-of-way, and on the need for the Gallaghers' consent, we reverse those rulings and the dismissal of the claims for damages within the right-of-way. We remand for a trial on those claims at which the scope of the Cooperative's easement will be determined according to the standard we have set forth above.[23] Evidence of trespass and damages within the right-of-way is admissible at trial. The court shall reconsider its ruling on the Cooperative's motion to exclude evidence of the need for the Gallaghers' consent in light of our holding on the scope of the Cooperative's easement, and shall reconsider as well any other ruling on either parties' motions in limine that is affected by this holding.

¶ 35. We also hold that damages in a trespass action may include compensation for discomfort and annoyance as provided in RESTATEMENT (SECOND) OF TORTS § 929(1)(c). On remand, the trial court shall reconsider the Cooperative's motion in limine regarding damages for trespass in light of this holding.

*By the Court.*—Order reversed and cause remanded with directions.

---

[23] Because the dismissal with prejudice of the claims for relief for damages outside the right-of-way was based on the Gallaghers' own motion, they are not entitled to a trial on these claims on remand. We can be no more specific than this because we are uncertain of the division the parties intended in their stipulation by distinguishing between "claims for damages within the right-of-way" and "claims for damages outside the right-of-way."